Hernan O'Ryan Castro
Reg. No. 73026-011
Taylor Street Center
111 Taylor Street
San Francisco, CA 94102

**In Pro Se**

FILED
NOV 14 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

CV 07        5775

HERNAN O'RYAN CASTRO,

        Petitioner,

   v.

ROBERT E. McFADDEN
    Western Regional Director,
    Federal Bureau of Prisons,

        Respondent.

Case No.

PETITIONER'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO 28
U.S.C. §2241 BY A PERSON IN
FEDERAL CUSTODY

    COMES NOW Petitioner, Hernan O'Ryan Castro (hereinafter "Castro"), in pro se, currently serving concurrent terms of incarceration imposed by the U. S. District Court for the Southern District of Georgia, and hereby respectfully files his Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody.

    The purpose of this action is to challenge the execution of

Castro's sentence, i.e., the Bureau of Prisons' (hereinafter "BOP") decision to impose "costs incident to [Castro's] official detention" while Castro is working at paid employment in the community, as directed by 18 U.S.C. § 3622(c)(2), where Castro is exempt from such payment pursuant to 28 C.F.R. § 505.3.

## BACKGROUND

On April 10, 1992, Castro was found guilty, after a jury trial, of two counts of conspiracy to violate the federal drug laws. Case No. CR491-142 for the Southern District of Georgia. On July 10, 1992, Castro was sentenced to serve concurrent terms of 20 years of incarceration, 10 years of supervised release, and a $100.00 special assessment. The imposition of a fine was waived. See attached copy of Judgment in a Criminal Case, Exhibit A. Castro began serving his concurrent terms of incarceration upon their imposition, on July 10, 1992. See attached copy of BOP's Sentence Computation, Exhibit B.

On May 6, 2005, while serving his terms of incarceration, the BOP found Castro eligible to enroll in the 500-hour Residential Drug Abuse Program (hereinafter "RDAP") and provisionally eligible for the 18 U.S.C. § 3621(e)(2)(B) sentence reduction, an incentive of up to a year sentence reduction authorized by Congress for those successfully completing the RDAP. Castro then executed an agreement whereby he agreed to comply with the rules and regulations of the RDAP as described therein. See copy of Residential Drug Abuse Program Notice to

Inmate, Exhibit C.

On January 31, 2007, the day that Castro began the 500-hour RDAP, Castro signed an agreement to participate in RDAP's community transitional component, while serving the last 180 days of his terms of incarceration in a community correctional center. See attached copy of Agreement to Participate in Community Transitional Programming, Exhibit D.

On June 21, 2007, Castro's Case Manager, John Johnson, a BOP employee at the Federal Prison Camp at Leavenworth, State of Kansas, where Castro was enrolled in the RDAP, requested Castro to sign an agreement to participate in community confinement in a community correctional center. A clause in that agreement requires Castro to "contribute to the cost of [Castro's] residency" at the community correctional center, by making "payments to the contractor." See attached copy of Community Based Program Agreement, Exhibit E. That agreement further states that Castro's failure to make such payments to the contractor "may result in [Castro's] removal from [the] community-based program." **Ibid.** Having no alternative, because of the RDAP 's requirement to participate in RDAP's community transitional component in order to maintain his provisional eligibility for the 18 U.S.C. § 3621(e)(2)(B) sentence reduction, Castro was compelled to sign the agreement.

On November 1, 2007, Castro successfully completed the institutional-based component of the RDAP, and on November 13, '07, he was transferred from the Federal Prison Camp at

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-3-

Leavenworth to the Taylor Street Center, a community correctional center located in San Francisco, California, where Castro is to complete the community transitional component of the RDAP. Castro is currently housed at the Taylor Street Center, and is attending community transitional programming. Upon his arrival to the Taylor Street Center, Castro was required to sign an agreement whereby he agreed to pay the BOP's contractor running the privately owned and operated Taylor Street Center, "25% of [his] Gross pay," while he is employed in the community and assigned to the center. See attached copy of Subsistence (Rent) Payments, Exhibit F.

JURISDICTION

A petition "that challenge[s] the manner, location, or conditions of a sentence's execution must be brought pursuant to [28 U.S.C.] §2241 in the custodial court." **Hernandez v. Campbell**, 204 F.3d 861, 864 (9th Cir. 2000). The 'custodial court' is the court with territorial jurisdiction over the prisoner or his custodian. **Brittingham v. United States**, 982 F.2d 378, 379 (9th Cir. 1992), citing **United States v. Giddings**, 740 F.2d 770, 772 (9th Cir. 1984).

In this case, Castro challenges the manner in which his concurrent sentences are being executed, i.e., the imposition of costs of incarceration pursuant to 18 U.S.C. §3622(c)(2), therefore, 28 U.S.C. §2241 is the proper statute to bring his claim. Castro is currently serving the last 180 days of his

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-4-

concurrent terms of incarceration at the Taylor Street Center, a community correctional center located in San Francisco, within the territorial jurisdiction of this Court, and, Respondent, Castro's immediate federal custodian, is also located within this Court's territorial jurisdiction. Therefore, this Court has jurisdiction over Castro's petition.

## ARGUMENT

On October 12, 1984, as part of the Sentencing Reform Act of 1984, Pub.L. 98-473, Title II, Chapter II, Section 212(a)(2), 98 Stat. 2007, Congress enacted Section 3622 of Title 18, U.S.C., which, in pertinent part, states

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to—
>   (c) work at paid employment in the community while continuing in official detention at the penal or correctional facility if—
>     (2) the prisoner agrees to pay the Bureau such costs incident to official detention as the Bureau <u>finds appropriate</u> and reasonable under all the circumstances, such costs to be collected by the Bureau and deposited in the Treasury to the <u>credit of the appropriation</u> available for such costs at the time such collections are made.
> 18 U.S.C. § 3622(c)(2) (2007) (emphasis added)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-5-

Also, as part of the same Act, Congress enacted the U. S. Sentencing Guidelines. Sentencing Reform Act of 1984, Pub.L. 98-473, Title II, 98 Stat. 1987. U.S.S.G. § 5E1.2(i), now 5E1.2(d)(7), as amended on November 1, 1997, states

> (d) In determining the amount of fine, the [sentencing] court shall consider:
> (7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed[.]
> U.S.S.G. § 5E1.2(d)(7) (2007).[1]

Application Note 7 to section 5E1.2 states that "[i]n considering subsection (d)(7), the court may be guided by reports published by the Bureau of Prisons and the Administrative Office of United States Courts concerning average costs." U.S.S.G. § 5E1.2, App. Note 7 (2007).

Finally, on October 6, 1992, as a note to section 4001 of Title 18, U.S.C., Congress commanded the Attorney General to "establish and collect a fee to cover the costs of confinement from any person convicted in a United States District Court and committed to the Attorney General's custody." 18 U.S.C. § 4001, Note, subsection (1); Pub.L. 102-395, Title I, § 101(a), 106 Stat. 1842. Congress further directed the Attorney General not to collect the "fee from any person with respect to whom a fine

---

[1] Subsection (i) to section 5E1.2 stated, before its deletion in 1997, that "(i) [n]otwithstanding of provisions of subsection (c) of this section, but subject to the provisions of subsection (f) herein, the [sentencing] court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered." U.S.S.G. § 5E1.2(i) (1987).

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-6-

was imposed or waived by a judge of a United States District Court pursuant to section 5E1.2(f) and (i) of the United States Sentencing Guidelines . . . or any successor provisions." 18 U.S.C. §4001, Note, subsection (4).

These three statutory provisions, 18 U.S.C. §3622(c)(2), U.S.S.G. §5E1.2(d)(7), and 18 U.S.C. §4001, Note, authorize the collection of costs incidental to a prisoner's imprisonment.

Under section 3621(a) of Title 18, U.S.C., "[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." 18 U.S.C. §3621(a) (2007). The Bureau has the discretion to designate a prisoner's place of imprisonment. 18 U.S.C. § 3621(b). In so doing, the Bureau "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise." **Ibid.**

Pursuant to section 3624(c) of Title 18, U.S.C., the Bureau has the discretion to place a prisoner serving a term of imprisonment "under conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for the prisoner's re-entry into the community." 18 U.S.C. §3624(c) (2007). Section 3624(c) authorizes the Bureau to place a prisoner in a community correctional center (hereinafter "CCC"), also referred to as a "halfway house." **Goldings v. Winn**, 383 F.3d 17, 22-23

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-7-

(1st Cir. 2004); **Elwood v. Jeter**, 386 F.3d 842, 846 (8th Cir. 2004) ([the government] agrees that a CCC is a penal or correctional facility and a place of imprisonment); **Woodall v. Federal Bureau of Prisons**, 432 F.3d 235, 243 (3rd Cir. 2005); **Fults v. Sanders**, 442 F.3d 1088, 1092 (8th Cir. 2006) (§3624(c) requires the consideration of a transfer to a CCC); **Wedelstedt v. Wiley**, 477 F.3d 1160, 1167 (10th Cir. 2007) (§3624(c) surely imposes an affirmative obligation on the BOP . . . to place an inmate in CCC or other form of community confinement).

As a CCC is a 'place of imprisonment' within section 3621(b), sections 3622, 4001, Note, and U.S.S.G. § 5E1.2(d)(7) are applicable to prisoners serving part of their terms of imprisonment in a CCC.

However, since Castro's sentencing court waived the imposition of a fine, and no additional fine to cover the costs to the government for Castro's incarceration was imposed, U.S.S.G. § 5E1.2(d)(7) and section 4001, Note, are inapplicable.

In exercising the discretion granted by Congress in the implementation, assessment, and collection of costs incidental to a prisoner's imprisonment, the Attorney General and the Bureau of Prisons have enacted two regulations. In the first one, effective November 25, 1994, the Attorney General implemented the mandate of 18 U.S.C. § 4001, Note , and U.S.S.G. § 5E1.2(d)(7),"to establish and collect a fee to cover the cost of one year of incarceration." 28 C.F.R. § 0.96c(a); 59 Fed.Reg. 60558, Order No. 1932-94, November 25, 1994. That section also

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-8-

delegates from the Attorney General to the Director of the Bureau of Prisons the authority mandated by 18 U.S.C. § 4001, Note. 28 C.F.R. § 0.96c(c). However, as neither 18 U.S.C. § 4001, Note, nor U.S.S.G. § 5E1.2(d)(7) are applicable to Castro, section 0.96c is also inapplicable.

The second regulation, which went into effect on January 1, 1995, for the stated purpose of "establishing procedures for the assessment and collection of a fee to cover the costs of incarceration for [f]ederal inmates." 59 Fed.Reg. 64780; Title 28 C.F.R., Part 505. On August 11, 1999, the Bureau published several amendments to 28 C.F.R., Part 505. Fed.Reg. 43881. **2/** One of the amended sections in the regulation, section 505.3, states

> Inmates who began service of sentence before January 1, 1995, or who have had a fine either imposed or expressly waived by the United States District Court, pursuant to section 5E1.2(e) of the United States Sentencing Guidelines, or any successor provisions, are _exempt_ from fee assessment otherwise required by this part.
> 28 C.F.R. § 505.3 (2003) (italic added)

Among the authorities cited for the enactment of Part 505 is

---

**2/** Section 505.1 of Title 28 C.F.R., as amended in 1999, in pertinent part states
> This part establishes procedures for assessment and collection of a fee to cover the cost of incarceration. The Director of the Bureau of Prisons has been delegated the authority of the Attorney General (see 28 CFR 0.96c) to assess and collect a fee imposed by the Bureau in the event the court neither imposes nor waives a fine pursuant to the Sentencing Guidelines 5E1.2(d).
> 28 C.F.R. § 505.1 (2007)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-9-

section 3622 of Title 18, U.S.C.  28 C.F.R., Part 505 (2007); 59 Fed.Reg. at 64781.  In contrast, section 0.96c does not reference section 3622.  Therefore, Part 505 is applicable to section 3622.  **Gleave v. Graham**, 954 F.Sipp. 599, 607-09 (N.D.N.Y. 1997); **United States v. Gonzalez**, 1993 U. S. Dist. LEXIS 12599, 1993 WL 362410 (S.D.N.Y. 1993).

From section 3622(c)(2) and 505.3 it is clear that prisoners who began serving their sentences prior to January 1, 1995, are exempt from paying the Bureau 'costs incident to official detention,' i.e., costs of incarceration.  As Castro began serving his concurrent 20-year terms of incarceration immediately upon their imposition, on July 10, 1992, he is clearly exempted from the assessment and collection of such costs. 3/

Although Castro is exempt, pursuant to section 505.3, from the assessment and collection of the costs of incarceration, including those costs attributed to the period while Castro is assigned to a community correctional center, on June 21, 2007, Castro signed the Community Based Program Agreement which contains a provision stating that Castro

> understand[s] that while a resident
> of a community correctional center
> . . . [Castro] will be expected to contribute
> to the cost of [his] residence through
> payments to the contractor and [Castro]

---

3/   Castro is also exempt under the second exemption in section
     505.3.  As above stated, the sentencing court, in sentencing
Castro, expressly waived the imposition of a fine.  See Exhibit A.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

>       agree[s] to make such payments.
>       Community Based Program Agreement, Exhibit E

Under contract law, a contract that is against 'public policy' is unenforceable. Restatement of Contracts (Second), Section 178; **Northern Indiana Public Service v. Carbon County Coal**, 799 F.2d 265, 273-73 (7th Cir. 1986); **Valenza v. Emmella Coutier**, 288 A.D.2d 114, 733 N.Y.S.2d 167 (2001). 'Public policy' can be enunciated by the Constitution, the legislature or the courts. **Anaconda Fed. Credit Union v. West**, 157 Mont. 175, 178, 483 P.2d 909, 911 (1971); **J.S. Aleberici Constr. v. Mid-West Conveyor**, 750 A.2d 518 (Del.Super. 2000); **Rome v. Upton**, 271 Ill.App.3d 517, 208 Ill.Dec. 163, 648 N.E.2d 1085 (1995); **Quiring v. Quiring**, 130 Idaho 560, 944 P.2d 695 (Idaho 1997). However, an illegal provision does not necessarily render the entire contract unenforceable. Rest.2d, §184; **Welcome Wagin v. Morris**, 224 F.2d 693 (4th Cir. 1955); **Kolani v. Gluska**, 64 Cal.App.4th 402, 75 Cal.Rptr.2d 257 (1998). If the illegal provision is not central to the agreement and does not involve serious moral turpitude, the illegal portion of the agreement is disregarded and the balance is enforceable. Rest.2d §184; **Marshall v. Wittig**, 213 Wis. 374, 251 N.W. 439 (1933); **Barrett Refining v. United States**, 242 F.3d 1055 (Fed.Cir.2001). In order to determine whether a provision may be severed from an agreement, the test is whether the parties would have entered into the agreement irrespective of the offending provision. Rest.2d, §184, Cmt. a. This can be usually determined by weighing the equality of the agreed exchange before and after

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-11-

the proposed severance.  **Ibid.**

In this case, the provision, requiring Castro to pay for his costs of incarceration while assigned to a community correctional center, is illegal because Castro is clearly exempt from such payments under section 505.3 of Title 28, C.F.R.  Also, because the Bureau authorizes other inmates to remain at community correctional centers without payment of costs of incarceration, for example inmates that are pretrial, holdovers, or detainees, those under the MINT Program (Mothers and Infants Together), and those to whom the Bureau has waived such requirement, BOP's Policy Statement 7310.04, severance of the provision would not have prevented the Bureau from authorizing Castro's transfer to a community correctional center.  Moreover, the Bureau is statutorily mandated to place a qualified prisoner, to the extent practicable, in a community correctional center. 18 U.S.C. § 3624(c).  Here, there are no reasons for considering Castro's placement in a community correctional center 'impracticable.'  Finally, the payment-provision is but a minor provision of the agreement, which main purpose is to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," 18 U.S.C. §3624(c), while ensuring that the prisoner adheres to the listed rules of conduct.  Therefore, the provision is severable, leaving the rest of the agreement intact and enforceable.

Even, arguendo, if the provision were not illegal, it would still have to be stricken as Castro was compelled to agree to the provision under duress.  Although Castro is and has been

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-12-

incarcerated since 1991, a threat of extending the period of incarceration, although a right of the Bureau, is still oppressive, and under certain circusmtances, constitutes an abuse of those rights sufficient for a finding of duress. Rest. 1st, §493, Comt. b. The facts of this case support such finding. The Community Based Program Agreement states that "failure to make payments may result in removal from [the] community-based program." Exhibit E.

When Castro was accepted in the RDAP on May 6, 2005, and on the first day of programming, January 31, 2007, Castro agreed to "continue transitional drug treatment services that included— [c]ontinued treatment programming upon [Castro's] return to the community through transfer to a CCC or on home confinement." Agreement to Participate in the Bureau of Prisons Residential Drug Abuse Program, Exhibit D, p. 2, unnumbered ¶4, second unnumbered subparagraph.

Castro's "[f]ailure to participate in continued treatment in the community transitional program may result in [Castro's] return to the institution[.]" **Ibid.** Furthermore, Castro's failure to successfully complete the community transitional phase of the RDAP would result in his loss of the provisional eligibility for the sentence-reduction award authorized by 18 U.S.C. §3621(e)(2)(B). 28 C.F.R. §550.58(a)(3)(i) (2007) **4/**;

---

**4/**   28 C.F.R. §550.58   **Consideration for early release**
     (a) Additional early release criteria
(3) An inmate who has successfully completed a Bureau of Prisons residential drug abuse treatment program on or after October 1, 1989 is otherwise eligible if:
(Continued next page)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-13-

**McLean v. Crabtree**, 173 F.3d 1176, 1182-84 (9th Cir. 1999). Neither the Residential Drug Abuse Program Notice to Inmate, Exhibit C, nor the Agreement to Participate in Community Transitional Programming, Exhibit D, informed Castro of the requirement to make 'subsistence' payments while completing the community-transitional phase of the RDAP. By the time Castro learned that he would be required to make such payments, when he was presented with the Community Based Program Agreement, Exhibit E, on June 21, 2007, Castro had already completed fifty percent of the institution-based phase of the RDAP, and was well on his way to successfully complete that phase of the program before beginning the community-based phase. Had Castro refused to sign the Community Based Program Agreement, he would have been unable to obtain CCC placement and that would have terminated his eligibility for the section 3621(e)(2)(B) sentence-reduction award—in this case, just under eight months.

Under the facts above presented, the mere threat of disqualifying Castro from CCC placement for failure to agree to make payments for the costs of his incarceration to the CCC's contractor was oppressive since it meant that Castro would surrender his provisional eligibility for the seven months and twenty days of sentence reduction he was then, and is now, eligible under section 3621(e)(2)(B). Castro assented to the

---

(Continued)
  (i) The inmate completes all applicable transitional services programs in a community-based program (i.e., in a Community Correctional Center or on home confinement)[.]

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-14-

Community Based Program Agreement's provision under duress. For the same reasons above stated, p. 12, supra, the costs-of-incarceration provision is severable, leaving the remainder of the agreement intact and enforceable.

## CONCLUSION

Section 505.3 of Title 28, C.F.R, and subsection (4) of the Note to section 4001 of Title 18, U.S.C., explicitly exempt those in Castro's situation from being assessed costs-of-incarceration charges. However, the BOP insists in imposing such charges to Castro in contravention of the statute and its own regulation.

WHEREFORE, Castro prays that this Court will find that Castro is exempt from being assessed costs-of-incarceration charges, and that the Bureau's continued efforts to force Castro to make such payments, through contractual obligations, are in contravention of Congress's intent and the Bureau's own regulation.

Respectfully submitted,

Date: November 13, 2007

Hernan O. Castro
In Pro Se

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-15-

VERIFICATION

I, the undersigned, hereby verify under penalty of perjury that the information contained in the attached Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody and Petitioner's Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody are true and correct to the best of my knowledge and belief.

Executed in San Francisco, County of San Francisco, California, this 13th day of November of 2007.

Hernán O'Ryan Castro
Reg. No. 73026-011
Taylor Street Center
111 Taylor Street
San Francisco, CA 94102

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

-16-