SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney

JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
Assistant United States Attorney

DENNIS M. WONG (CSBN 173951)
Special Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (925)803-4760
FAX: (415) 436-6748
Email: dwong@bop.gov

Attorneys for Federal Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERNAN O'RYAN CASTRO,<br><br>    Petitioner,<br><br>    v.<br><br>ROBERT E. McFADDEN, Western Regional Director, Federal Bureau of Prisons,<br><br>    Respondent. | No. 07-CV-5775-PJH<br>E-FILING CASE<br><br>ANSWER AND OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |

**I. INTRODUCTION & SUMMARY OF ARGUMENT**

Through a petition for writ of habeas corpus ("Petition"), petitioner Hernan Castro ("Petitioner") seeks to enjoin the Bureau of Prisons ("BOP") from enforcing the Offender Subsistence Collection program (hereinafter "Subsistence Program"), which "promotes financial responsibility and offset[s] the cost of incarceration" by requiring inmates assigned to a Residential Reentry Center ("RRC") to pay 25% of their gross income to the RRC.[1]

---

[1] The "Offender Subsistence Collection" program is a Bureau of Prisons correctional program, and is set forth in BOP Program Statement 7300.09, *Community Corrections Manual*,

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH             1

Respondent opposes this Petition for several reasons. First, this Petition should be dismissed because Petitioner failed to exhaust administrative remedies, which is a prerequisite to bringing suit. *See Porter v. Nussle*, 122 S.Ct. 983, 922 (2002). Second, this Petition should be dismissed because the Subsistence Program is a valid correctional program that was implemented pursuant to 18 U.S.C. § 4001(b)(2) to provide for the "proper government, discipline, treatment, care, rehabilitation, and reformation" of the inmate. Third, Petitioner asserts exceptions that are not applicable to the Subsistence Program.

## II.  FACTS

### A.  Background Information On Petitioner

On July 14, 1992, Petitioner received a 240 month sentence for violations of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute cocaine, and 21 U.S.C. §§ 960 and 963, conspiracy to import into U.S. from outside territorial limits, multi-kilo quantities of cocaine hydrochloride. *See* Exhibit 1 to Beakey Declaration. From November 9, 2005, to November 11, 2007, Petitioner was at the Satellite Prison Camp ("SCP") at Leavenworth, Kansas. *See* Exhibit 2 to Beakey Declaration. On November 11, 2007, Petitioner was furlough transferred from SCP Leavenworth to a Residential Reentry Center ("RRC") in San Francisco, which means he was permitted by the BOP to transport himself to the RRC. *See* Beakey Declaration. Petitioner arrived at the San Francisco RRC on November 13, 2007, where he is currently housed. *Id.* Petitioner's projected release date is May 10, 2008, which includes a sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B), which is contingent on satisfactory completion of the transitional drug abuse program at the RRC, and so long as he abides by other conditions of the Residential Drug Abuse Treatment Program ("RDAP"), e.g., no use of illegal drugs. *Id.*

### B.  The RRC and Petitioner's Participation in the Subsistence Program

A RRC is more commonly known as a halfway house, and was formerly known in the BOP as Community Corrections Centers. *See* Beakey Declaration. Placement in a RRC towards the end of an inmate's sentence, helps them transition back to the community. *Id.* All inmates must agree

---

at chapter 5, pages 30-31.  *See* Exhibit 3 to Declaration of Kim Beakey ("Beakey Declaration").

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH                              2

to participate in the Subsistence Program, which is set forth in Program Statement ("P.S.") 7300.09, *Community Corrections Manual*, Chapter 5, pgs 30-31. *See* Exhibit 3 to Beakey Declaration. It states in pertinent part:

> To promote financial responsibility and offset the cost of incarceration, the Bureau requires inmates to make subsistence payments to contractors. Contractors shall collect 25% of each employed inmate's weekly gross income, not to exceed the daily inmate-day rate.

*Id.*

On June 21, 2007, Petitioner signed the Community Based Program Agreement, which states in pertinent part:

> I understand that while a resident of a community corrections center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments. I understand that failure to make payments may result in my removal from a community–based program.

*See* Exhibit 4 to Beakey Declaration.

Accordingly, Petitioner has been provided subsistence payment instructions from the Contractor who currently operates his designated RRC. *See* Exhibit 5 to Beakey Declaration.

### C. Petitioner's Administrative Remedies

On October 2, 2007, Petitioner filed a request for administrative remedy, challenging the requirement that he pay subsistence to the RRC. *See* Exhibit 1 to Vickers Declaration. However, Petitioner believed the subsistence payment requirement emanated from a Cost of Incarceration Fees ("COIF") authority, and asserted he was exempt from paying a COIF, and that it was otherwise unconstitutional and illegal. *Id.* On November 5, 2007, Warden Chester explained that the COIF was unrelated to the subsistence payments, and denied Petitioner's request to be exempt from making those subsistence payments. *See* Exhibit 2 to Vickers Declaration.

On November 6, 2007, Petitioner appealed and maintained that subsistence payments arose from COIF-related authorities, and claimed he was accordingly exempt. *See* Exhibit 3 to Vickers Declaration. On December 7, 2007, the North Central Regional Director cited to BOP policy at Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure*, as the authority for the required subsistence payments, and denied Petitioner's appeal. *See* Exhibit 4 to Vickers Declaration; *see also* Exhibit 6 to Beakey Declaration.

As exhaustion of BOP administrative remedies requires filing a request or appeal and getting a decision at all three levels, Petitioner's failure to complete the last level (appeal to Central Office) indicates he has not yet exhausted his available administrative remedies. *See* Vickers Declaration.

### D. The BOP Programs Regarding Costs of Incarceration Fines and Fees, Are Separate From The Offender Subsistence Collection Program

Congress has passed numerous legislation permitting, and in some cases mandating, that an inmate in federal custody assist in paying his cost of incarceration. In some instances the cost of incarceration is to be assessed by the BOP and deposited in the treasury to offset the tax expenditure appropriated for the Federal Prison System. *See* 18 U.S.C. § 3622(c)(2). In other instances the cost is to be assessed by the sentencing court in the form of a fine, and is intended to be punitive in nature. *See* U.S.S.G. § 5E1.2(d)(7). There is also a costs of incarceration fee program that controls when the court neither imposes nor waives the fine. *See* 28 C.F.R. § 505.1. In addition to these congressional mandates, to promote financial responsibility and prepare the inmate for release into the community, the BOP requires inmates to make subsistence payments directly to the RRC contractor. *See* P.S. 7300.09 Chapter 5.13.1; *see also, e.g., Gleave v. Graham*, 4 F. Supp. 2d 163 (W.D.N.Y 1997). Although each of these programs has an independent basis for the assessment and collection of the cost of incarceration, Congress and the BOP have taken steps to ensure that an inmate is not charged duplicative costs.

#### 1. Imposition of Punitive Fines by the Sentencing Court under the Sentencing Reform Act

In 1984, Congress passed the Sentencing Reform Act, which authorized the creation of a list of factors to be considered by the sentencing court in deciding "whether to impose a fine, and the amount, time for payment, and method of payment of a fine." 18 U.S.C. § 3572(a). One of the factors requires the courts to consider "the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence." 18 U.S.C. § 3572(a)(6). Although a sentencing court is required to consider the costs of incarceration in imposing a fine, the purpose of the fine is not to reimburse the BOP for the cost of incarceration. Rather, the purpose of the fine is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense ... [and] to afford adequate deterrence to criminal conduct." 18 U.S.C.

§ 3553(a)(2)(A) & (B). In other words, the court-imposed fine is punitive in nature.[2] *See United States v. Zakhor*, 58 F.3d 464 (9th Cir. 1995) (holding that prior to direct congressional authority to impose a fine for the cost of incarceration, the fine is valid because it serves the purposes of "just punishment and deterrence.") This fine has been referred to as a Cost of Incarceration *Fine*, which can be confusing due to the similar acronym of the Cost of Incarceration *Fee*, and as a result, is distinguished in BOP policy in P.S. 7300.09, Chapter 5, page 38 ("Note that the Cost of Incarceration Fee, which is imposed by the Bureau, is distinct from the Cost of Incarceration Fine, which is imposed by the courts.")

### 2. Imposition of Costs by the BOP under the Sentencing Reform Act

In addition to providing sentencing guidelines for the sentencing court, the Sentencing Reform Act also created rules regarding the post sentence administration of inmates. *See* 18 U.S.C. § 3622. The Act authorizes the BOP to temporarily release a prisoner from "official detention at [a] penal or correctional facility" for the purpose of "work at paid employment in the community," provided that "the prisoner agrees to pay to the Bureau such costs incident to official detention as the Bureau finds appropriate and reasonable under all circumstance." *Id.* Costs under this act are to be collected by the BOP and deposited in the Treasury. *Id.*

### 3. Imposition of a Cost of Incarceration Fee by the Attorney General

On October 6, 1992, Congress passed a law requiring that the Attorney General "establish

---

[2] In addition to considering the cost of incarceration, the sentencing court is also required to consider: 1) the defendant's income, earning capacity, and financial resources; 2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose; 3) any pecuniary loss inflicted upon others as a result of the offense; 4) whether restitution is ordered or made and the amount of such restitution; 5) the need to deprive the defendant of illegally obtained gains from the offense; 6) whether the defendant can pass on to consumers or other persons the expense of the fine; and 7) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense. 18 U.S.C. § 3572(a)

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH          5

and collect a fee to cover the costs of confinement from any person convicted in a United States District Court and committed to the Attorney General's custody." 18 U.S.C. § 4001 at *note* under *Fee to Recover the Cost of Incarceration*. Congress mandated that this fee be "equivalent to the average cost of one year incarceration," and that it should not be collected against inmates that had a fine imposed or waived under the U.S. Sentencing Guidelines. *Id.* The authority to collect this fee was subsequently been delegated to the Director of the BOP. 28 C.F.R. 0.96c. The Director of the BOP is required to "review and determine the amount of the fee not less than annually" and to "publish each year's fee as a Notice in the Federal Register." *Id.* This program is the one commonly known as the COIF, and appears to be the one Petitioner confuses with the Subsistence Program. The COIF is actually referenced in a separate section of P.S. 7300.09 at Chapter 5, pgs 38-39, and has its own Program Statement, 5380.06, entitled, *Cost of Incarceration Fee (COIF)*, which is available at www.bop.gov and BOP inmate law libraries.

### 4. Offender Subsistence Collection Program

As stated previously, the Subsistence Program is set forth in P.S. 7300.09, *Community Corrections Manual*, Chapter 5, pgs 30-31. "The subsistence program applies to all offenders assigned to community-based programs."[3] *Id.* at 30. "An inmate who fails to pay subsistence may have privileges withheld or disciplinary actions may be taken, including termination from the program." *Id.* The Subsistence Program is also referenced in P.S. 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure*, Section 7, page 4:

> During their stay, inmates are required to pay a subsistence charge to help defray the cost of their confinement; this charge is 25% of their gross income, not to exceed the average daily cost of their CCC placements. Failure to make subsistence payments may result in disciplinary action.

*See* Exhibit 6 to Beakey Declaration.

---

[3] As RRC conditions apply to all individuals housed in a RRC, even non-BOP inmates who reside there as a condition of supervision or parole, the Subsistence Program is similarly applicable. *See* pages 7-9 of Exhibit 3 to Beakey Declaration.

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH                         6

### III. THIS HABEAS PETITION SHOULD BE DISMISSED BECAUSE PETITIONER FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to *prison conditions* under section 1983 of this title, *or any other Federal Law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added) 42 U.S.C. § 1997e(a). The Supreme Court explained the purpose behind the PLRA's exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. (Citation omitted). In other instances, the internal review might "filter out some frivolous claims." (Citation omitted). And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter*, 122 S.Ct. at 988.

Accordingly, there are broad-reaching reasons why exhaustion is required before filing a lawsuit challenging prison conditions. As this Petition challenges the conditions an inmate must agree to abide by before being housed in a RRC, the PLRA applies. *See Porter*, 122 S.Ct. at 992; *see also Jones v. Bock*, 127 S.Ct. 910, 924-925 (2007). Although many courts, including those in this District, have considered the exhaustion argument as a judicial requirement rather than a statutory one (*see Cristoval v. Clark*, 2007 WL 2746742 (N.D. Cal.); *Reyna v. Copenhager*[sic], 2007 WL 2504893 (N.D. Cal.); *Felty v. Clark*, 2007 WL 2438337 (N.D. Cal.), at least one court has framed the issue properly: "As exhaustion is required under [case law], the Court need not address [the Government's] argument that exhaustion is also required under the Prisoner Litigation Reform Act because the petition challenges petitioner's 'prisoner conditions.'" *Zavala*

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH          7

*v. Clark*, 2007 WL 2705216 (N.D. Cal.), at *1.  As challenging the BOP's policy mandating subsistence payments as a condition of his RRC placement is clearly a lawsuit challenging his prison conditions, the PLRA controls and exhaustion is mandatory.  *See Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.")

For purposes of the PLRA, "an action is 'brought' ... when the complaint is tendered to the district clerk, and not when it is subsequently filed." *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir.2006).  Prisoners must complete the prison's administrative process, regardless of the relief offered by the process, so long as the administrative process can provide some sort of relief on the complaint stated.  *Booth v. Churner*, 121 S.Ct. 1819,1825 (2001).[4]  A "prisoner need not exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir.2005).  The PLRA requires proper exhaustion and a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative appeal or grievance. *Ngo*, 126 S.Ct. at 2382.  As a result, exhaustion of the prison's administrative process must occur prior to bringing suit. *See Vaden*, 449 F.3d at 1050; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir.2002). Therefore, as Petitioner did not exhaust *all* of his available administrative remedies before filing this lawsuit, and still has not by virtue of still having to complete the appeals process at the Central Office level (*see* Vickers Declaration), this Petition should be dismissed.

---

[4] As P.S. 7300.09, Chapter 5, pgs 30-31, allows for inmates to "waive or modify subsistence payments on a case-by-case basis . . . ," there is some form of relief Petitioner could ask for.  Although there is no futility exception under the PLRA, the possibility of getting his subsistence payment waived further extinguishes any exception to exhaustion.

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH                 8

### IV. PETITIONER IS OBLIGATED TO PAY 25% OF HIS INCOME TO THE RRC UNDER THE BOP'S SUBSISTENCE PROGRAM

**A.  The Subsistence Program is a Valid Exercise of the BOP's Mandate to Manage Its Inmate Population**

The control and management of Federal penal and correctional institutions is vested in the Attorney General.  18 U.S.C. § 4001(b)(1).  The Attorney General has the authority to promulgate rules that provide for the "proper government, discipline, treatment, care, rehabilitation, and reformation" of inmates under his care.  *Id.*  The BOP, under the direction of the Attorney General, is charged with, and delegated, the task of managing and regulating the Federal penal and correctional institutions.  18 U.S.C. §§ 4041 & 4042.  Pursuant to this delegation, the BOP has created the Subsistence Program, which states:

> To promote financial responsibility and offset the cost of incarceration, the Bureau requires inmates to make subsistence payments to contractors. Contractors shall collect 25% of each employed inmate's weekly gross income not to exceed the daily inmate-day rate.

Program Statement 7300.09, Ch. 5.13.1.

This program is related to the "government, discipline, treatment, care, rehabilitation, and reformation" of the inmate, and therefore, is within the purview of the BOP's grant of authority under 18 U.S.C. §§ 4001(b), 4041 & 4042.

**B.  Petitioner's Reliance On Other Costs of Incarceration Provisions Is Misplaced And Inapposite**

Petitioner cites various statutes, sentencing guidelines, and federal regulations concerning fines and fees relating to the costs of incarceration (*see* Petitioner's Memorandum of Points and Authorities at 8-10), in an effort to claim exemptions, but these provisions do not concern the Subsistence Program, the program that currently authorizes the collection of 25% of his gross pay to the contractor that operates the RRC.  P.S. 7300.09 is clear on its face that the Subsistence

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH                9

Program stands separately as a BOP program, and is implicit that it is created pursuant to the BOP's general authority to manage its inmates under 18 U.S.C. § 4042. Petitioner did cite to *Gleave v. Graham*, 954 F.Supp. at 608, which is the only case Respondent could find discussing the Subsistence Program, which held that the Subsistence Program did not violate a prisoner's constitutional rights. However, the *Gleave* Court appears to merge the authority for the Subsistence Program with the authority for the COIF and the imposition of costs under 18 U.S.C. § 3622 (*see Gleave* at 607-608), which may have prompted Petitioner's misunderstanding.[5] Accordingly, there is no merit to Petitioner's arguments against the Subsistence Program.[6]

### V. CONCLUSION

Based on the foregoing, Respondent requests an order dismissing this matter for failure to exhaust available administrative remedies. Alternatively, Respondent requests an order denying this Petition as the BOP properly exercised its authority under 18 U.S.C. § 4042 to create and operate the Subsistence Program, and there are no applicable exceptions.

Dated: December 14, 2007

Respectfully submitted,
SCOTT N. SCHOOLS
United States Attorney

By:     /s/_____
Dennis M. Wong
Special Assistant U.S. Attorney

---

[5] As *Gleave* involved a civil rights lawsuit against halfway house employees, and not the BOP, that may explain the inaccurate facts concerning the Subsistence Program. *Id.* at 603-604; *see also* fn. 3 (indicates defendants sought dismissal because BOP was an indispensable party).

[6] Petitioner's remaining argument challenging the agreement he signed that includes a provision about the Subsistence Program is equally meritless. The BOP does not contend the agreement is a contract, as opposed to a notice to Petitioner of the BOP's expectations that he must abide by. *See* Beakey Declaration. As a result, the enforceability of such an agreement is a non-issue.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the U.S. Department of Justice, and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she is causing a copy of the following:

**ANSWER AND OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS AND DECLARATIONS OF KIM BEAKEY AND JENNIFER VICKERS**

to be served this date upon the party in this action by placing a true copy thereof in a sealed envelope, and served as follows:

__X__    **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

____    **PERSONAL SERVICE (BY MESSENGER)**

____    **FACSIMILE (FAX)** Telephone No.:

to the parties addressed as follows:

Hernan Castro, Reg. No. 73026-011
Taylor Street Center
111 Taylor Street
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2007, at Dublin, California.

_____
Terri Nubla, Legal Instruments Examiner

Respondent's Answer & Opposition
*Castro v. McFadden*, 07-CV-5775-PJH