SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney

JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
Assistant United States Attorney

DENNIS M. WONG (CSBN 173951)
Special Assistant United States Attorney

  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102-3495
  Telephone: (925)803-4760
  FAX: (415) 436-6748
  Email: dwong@bop.gov

Attorneys for Federal Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HERNAN O'RYAN CASTRO,<br><br>      Petitioner,<br><br>   v.<br><br>ROBERT E. McFADDEN, Western Regional Director, Federal Bureau of Prisons,<br><br>      Respondent. | No. 07-CV-5775-PJH<br>E-FILING CASE<br><br>DECLARATION OF KIM BEAKEY |

Declaration of Kim Beakey
*Hernan O'Ryan Castro v. McFadden,* 07-CV-5775-PJH   1

I, Kim Beakey, do declare and state the following:

1. Prior to March of 2006, I was the Regional Designator for the Western Region, employed by the Federal Bureau of Prisons ("BOP"), United States Department of Justice. My duties as the Regional Designator included evaluating individuals who were federally sentenced in the Western Region for initial designation to an appropriate BOP facility. I also evaluated inmates in the Western Region for redesignation (transfer) to other BOP facilities. The Western Region includes the states of California, Alaska, Arizona, Nevada, Utah, Oregon, Idaho, Montana, Washington, Hawaii and Wyoming. I held that position since June of 2004.

2. After March of 2006, some of my duties and responsibilities changed, and I am now a Correctional Programs Specialist. Specifically, most of my designation responsibilities transferred to the Designation and Sentence Computation Center ("DSCC"), located in Grand Prairie, Texas. The DSCC is a new BOP operation established to centralize certain functions that used to be done at regional offices and institutions. As a Correctional Programs Specialist, my duties include overseeing the inmate population in the Western Region.

3.  As part of my duties, I provide assistance to the U.S. Attorney's Offices, when there are requests for inmate records, or questions concerning BOP policies.   I am familiar with records compiled by the BOP and have access to them, and I provide copies to requesting Department of Justice employees in the ordinary course of business.  In this case, I have obtained a copy of certain records for inmate Hernan O'Ryan Castro, Register No. 73026-011. Specifically, I have obtained Mr. Castro's Judgment, which reflects he was convicted and received a sentence of 240 months from the Honorable John F. Nangle, from the Southern District of Georgia, for violations of 21 U.S.C. § 846,  conspiracy to possess with the intent to distribute cocaine, and 21 U.S.C. §§ 960 and 963, conspiracy to import into U.S. from outside territorial limits, multi-kilo quantities of cocaine hydrochloride, a true and correct copy of which is attached as Exhibit 1.

4. I have also obtained a copy of inmate Castro's Public Information Inmate Data

printout, which is generated from the BOP inmate database called SENTRY, a true and correct copy of which is attached as Exhibit 2. Exhibit 2 lists various information about a specific inmate that is considered by the BOP to be releasable to the general public. For example, from Exhibit 2, I can ascertain that inmate Castro was at the Satellite Prison Camp ("SCP") at Leavenworth, Kansas, from November 9, 2005, through November 11, 2007, and that he was then furlough transferred to a Residential Reentry Center ("RRC") on November 11th, arriving at his designated RRC on November 13, 2007. A RRC was formerly referred to as community corrections centers in BOP policies, and are more commonly known as halfway houses. A "furlough transfer" means that inmate Castro was allowed to transport himself to the RRC. According to SENTRY and pertinent BOP records, inmate Castro currently resides in BOP custody at a San Francisco RRC.

5. Exhibit 2 shows that inmate Castro's projected release date is May 10, 2008, as a result of his participation in the BOP's Residential Drug Abuse Treatment Program ("RDAP"). Satisfactory completion of the various components of the RDAP can provide the benefit of an up to one-year reduction in sentence, pursuant to 18 U.S.C. § 3621(e)(2)(B). Accordingly, SENTRY indicates that inmate Castro is currently going through the community-based transitional services of the RDAP, and so long he maintains satisfactory participation of this part of the RDAP, and abides by all other conditions of the RDAP as set forth in BOP policies, e.g., no illegal drug use, inmate Castro will be released from BOP custody on May 10, 2008.

6. Placement in a RRC towards the end of an inmate's sentence, helps inmates transition back to the community. However, to be placed in a RRC, all inmates must agree to various conditions, such as agreeing to participate in the Offender Subsistence Collection program, which is set forth in Program Statement 7300.09, *Community Corrections Manual*, Chapter 5. True and correct copies of Chapter 5 of P.S. 7300.09, pages 7-9, 30-31 and 38-39 are attached as Exhibit 3. Page 7-9 of Exhibit 3 explains how all individuals placed in a RRC are subject to RRC restrictions, such as those placed there by a Court while on probation/supervised release. Pages 30-31 of Exhibit 3 set forth the Offender Subsistence Collection program, and

pages 38-39 help distinguish the Offender Subsistence Collection program from the Cost of Incarceration Fee ("COIF") and Cost of Incarceration Fine programs.

7.   I have obtained a copy of the Community Based Program Agreement signed by inmate Castro on June 21, 2007, which is attached as Exhibit 4.  Exhibit 4 acknowledges inmate Castro's agreement to pay for various expenses, such as to "contribute to the cost of [his] residence through payments to the contractor . . . ." and "to assume financial responsibility [his] health care. . . ."  If an inmate refuses to agree to these conditions, or violates them after he arrives at a RRC, the inmate will be returned to a non-community based BOP facility.  In sum, agreements of this sort are not considered by the BOP to be contracts, but instead, function as providing notice of the BOP's expectations to the inmate, so the inmate is aware of the consequences if such expectations are not met.

8.   I have obtained a copy of the notice of subsistence payments that the current contractor for the San Francisco RRC provides to inmates, which I understand was provided to inmate Castro, a true and correct copy of which is attached as Exhibit 5.

9.   The Offender Subsistence Collection program is also referenced in Program Statement 7310.04,  *Community Corrections Center (CCC Utilization and Transfer Procedure*, at pages 4 - 6, a true and correct copy of which is attached as Exhibit 6.  Page 4 of Exhibit 6 specifies how inmates are to pay a subsistence charge of 25% of their gross income.   A similar provision is at page 6 of Exhibit 6, in the event the inmate has available the option of home confinement and electronic monitoring.

I declare under the penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my information, knowledge and belief.  Executed this *13* day of December, 2007, at Dublin, California.

Kim Beakey
Correctional Programs Specialist

Declaration of Kim Beakey
*Hernan O'Ryan Castro v. McFadden,* 07-CV-5775-PJH  4

# Exhibit 1

**Judgment in *U.S. v. Hernan O'Ryan Castro*, CR 491-142-03, Southern District of Georgia**

AO 245 S (Rev. 4/90) Sheet 1 - Judgment in a Criminal Case

# United States District Court

_____Southern_____ District of ___Georgia___

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| V. | **(For Offenses Committed On or After November 1, 1987)** |
| Hernan O'Ryan Castro | Case Number: CR491-142-03 |
| (Name of Defendant) | Mark Jenkins and Pomeroy Williams |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____
☒ was found guilty on count(s) _____1 and 2_____ after a
plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21: 846 | Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine | 07-30-91 | 1 |
| 21: 960 and 963 | Conspiracy to Import into the U.S. from Outside Territorial Limits thereof, Multi-kilo Quantities of Cocaine Hydrochloride | 07-30-91 | 2 |

The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____,
and is discharged as to such count(s).
☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.
☒ It is ordered that the defendant shall pay a special assessment of $ __100.00__, for count(s)
_____1 and 2_____, which shall be due ☒ immediately ☐ as follows:

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: __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__

Defendant's Date of Birth: __04-10-55__

Defendant's Mailing Address:

5 Santa Ana Avenue

Daly City, California   94015

Defendant's Residence Address: **ATTEST. A COPY**

U.S. Bureau of Prisons

Certified to ___JUL___ _1992_ 19___

_____
Deputy Clerk

July 10, 1992
Date of Imposition of Sentence

_____
Signature of Judicial Officer

Honorable John F. Nangle
United States District Judge
Name & Title of Judicial Officer

JULY 14, 1992
Date

AO 245 S (Rev. 4/90) Sheet 2 - Imprisonment

Defendant:    Hernan O'Ryan Castro                    Judgment—Page __2__ of __4__
Case Number:  CR491-142-03

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ___240 months as to each of Counts 1 and 2, to be served concurrently.___

☒ The court makes the following recommendations to the Bureau of Prisons:

The Court recommends that the defendant be allowed to serve his period of incarceration at either FCI Lompoc, CA, FCI Terminal Island, CA, or FCI Pleasanton, CA.

☒ The defendant is remanded to the custody of the United States marshal.
☐ The defendant shall surrender to the United States marshal for this district,
    ☐ at _____ a.m.
            p.m. on _____,
    ☐ as notified by the United States marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons,
    ☐ before 2 p.m. on _____.
    ☐ as notified by the United States marshal.
    ☐ as notified by the probation office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____ at

_____, with a certified copy of this judgment.

_____
United States Marshal

By _____
Deputy Marshal

Defendant:  Hernan O'Ryan Castro                    Judgment—Page ___3___ of ___4___
Case Number:  CR491-142-03

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____

_____ 10 years _____ .

While on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance. The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

☒ The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

☐ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

☒ The defendant shall not possess a firearm or destructive device.

**The defendant shall participate in a program as directed by the United States Probation Office for substance abuse, which may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.**

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime.  In addition:

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 S (Rev. 4/90) Sheet 7 - Statement  easons

Defendant:  Hernan O'Ryan Castro                    Judgment—Page __4__ of __4__
Case Number:  CR491-142-03

## STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

OR

☒ The court adopts the factual findings and guideline application in the presentence report except
(see attachment, if necessary):  **The Court orders that paragraph 10, page 4, of the Presentence
Report be amended, striking the phrase "however, Castro first insisted on delivering a 1
kilogram sample of cocaine."**

Guideline Range Determined by the Court:

Total Offense Level: _____32_____

Criminal History Category: _____II_____

Imprisonment Range: _____ ☒☒ 240 months

Supervised Release Range: ____ ☒☒ 10 years

Fine Range: $ 17,500.00 to $ 16,000,000.00

☒ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: $ N/A

☐ Full restitution is not ordered for the following reason(s):

☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no
reason to depart from the sentence called for by application of the guidelines.

OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed
for the following reason(s):

OR

The sentence departs from the guideline range

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following reason(s):

# Exhibit 2

**Public Information Inmate Data printout for Hernan Castro, Reg. No. 73026-011**

Case 3:07-cv-05775-PJH   Document 5-2   Filed 12/14/2007   Page 11 of 38

```
REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 916-930-2010    FAX: 916-930-2008
                                            RACE/SEX...: WHITE / MALE
FBI NUMBER.: 811194DA9                      DOB/AGE....: 04-10-1955 / 52
PROJ REL MT: BOP SUBST ABUSE TRTMT REL      PAR ELIG DT: N/A
PROJ REL DT: 05-10-2008                     PAR HEAR DT:
------------------------- ADMIT/RELEASE HISTORY -------------------------
FCL    ASSIGNMENT  DESCRIPTION             START DATE/TIME STOP  DATE/TIME
CSC    A-DES       DESIGNATED, AT ASSIGNED FACIL 11-13-2007 1105 CURRENT
3-L    RELEASE     RELEASED FROM IN-TRANSIT FACL 11-13-2007 1405 11-13-2007 1405
3-L    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 11-11-2007 0954 11-13-2007 1405
LVN    FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 11-11-2007 0854 11-11-2007 0854
LVN    A-DES       DESIGNATED, AT ASSIGNED FACIL 09-02-2007 1810 11-11-2007 0854
LVN    FURL SOC    FURLOUGH-SOCIAL              08-31-2007 0709 09-02-2007 1810
LVN    A-DES       DESIGNATED, AT ASSIGNED FACIL 11-09-2005 0711 08-31-2007 0709
6-R    RELEASE     RELEASED FROM IN-TRANSIT FACL 11-09-2005 0811 11-09-2005 0811

G0002       MORE PAGES TO FOLLOW . . .
```

Case 3:07-cv-05775-PJH  Document 2  Filed 12/14/2007  Page 12 of 38

```
                            PUBLIC INFORMATION
                                INMATE DATA
                             AS OF 11-27-2007

REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 916-930-2010    FAX: 916-930-2008
6-R    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 11-07-2005 1050 11-09-2005 0811
TAF    FURL TR NC  FURL W/UNESCORT TRF NOT TO CCC 11-07-2005 0750 11-07-2005 0750
TAF    A-DES       DESIGNATED, AT ASSIGNED FACIL  10-13-2000 1521 11-07-2005 0750
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-13-2000 1821 10-13-2000 1821
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-13-2000 0900 10-13-2000 1821
OKL    HLD REMOVE  HOLDOVER REMOVED               10-13-2000 0800 10-13-2000 0800
OKL    A-HLD       HOLDOVER, TEMPORARILY HOUSED   10-12-2000 1700 10-13-2000 0800
I-T    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-12-2000 1800 10-12-2000 1800
I-T    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-13-2000 0530 10-12-2000 1800
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL  09-13-2000 0530 09-13-2000 0530
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-12-2000 0800 09-13-2000 0530
OKL    HLD REMOVE  HOLDOVER REMOVED               09-12-2000 0700 09-12-2000 0700
OKL    A-HLD       HOLDOVER, TEMPORARILY HOUSED   09-01-2000 1700 09-12-2000 0700


G0002       MORE PAGES TO FOLLOW . . .
```

Case 3:07-cv-05775-PJH   Document 52   Filed 12/14/2007   Page 13 of 38

REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 916-930-2010   FAX: 916-930-2008
PRE-RELEASE PREPARATION DATE: 11-10-2007


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  05-10-2008 VIA 3621E CMPL

----------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

COURT OF JURISDICTION...........: GEORGIA, SOUTHERN
DOCKET NUMBER...................: CR-94-142-03
JUDGE...........................: NANGLE
DATE SENTENCED/PROBATION IMPOSED: 07-10-1992
DATE COMMITTED..................: 08-07-1992
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

G0002      MORE PAGES TO FOLLOW . . .

Case 3:07-cv-05775-PJH   Document 15-2   Filed 12/14/2007   Page 14 of 38

                              PUBLIC INFORMATION
                                 INMATE DATA
                              AS OF 11-27-2007

REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 916-930-2010   FAX: 916-930-2008


               FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00       $00.00          $00.00       $00.00


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 ------------------------
OFFENSE CODE....:  391
OFF/CHG: IN VIOLATION OF TITLE 21 USC 846; CONSPIRACY TO POSSESS
         W/INTENT TO DISTRIBUTE AND DISTRIBUTION OF COCAINE. IN
         VIOLATION OF TITLE 21 USC 960 AND 963; CONSPIRACY TO IMPORT
         INTO THE U.S. FROM OUTSIDE TERRITORIAL LIMITS THEREOF, MULTI-
         KILO QUANTITIES OF COCAINE HYDROCHLORIDE.


G0002      MORE PAGES TO FOLLOW . . .

Case 3:07-cv-05775-PJH   Document 5-2   Filed 12/14/2007   Page 15 of 38

REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020            ALL CURR COMPS(Y/N): Y    ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS           RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                       PHONE..: 916-930-2010    FAX: 916-930-2008


  SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   240 MONTHS
  TERM OF SUPERVISION............:    10 YEARS
  DATE OF OFFENSE................: 07-31-1991

------------------------CURRENT COMPUTATION NO: 020 ------------------------

COMPUTATION 020 WAS LAST UPDATED ON 08-22-2007 AT LVN AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010

DATE COMPUTATION BEGAN..........: 07-10-1992

G0002        MORE PAGES TO FOLLOW . . .

Case 3:07-cv-05775-PJH   Document 15-2   Filed 12/14/2007   Page 16 of 38
                         PUBLIC INFORMATION
                            INMATE DATA
                          AS OF 11-27-2007


REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 916-930-2010    FAX: 916-930-2008
TOTAL TERM IN EFFECT............:    240 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     20 YEARS
EARLIEST DATE OF OFFENSE........: 07-31-1991


JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     08-05-1991     07-09-1992


TOTAL PRIOR CREDIT TIME.........: 340
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 941
TOTAL GCT EARNED................: 864
STATUTORY RELEASE DATE PROJECTED: 01-05-2009
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 08-04-2011


G0002       MORE PAGES TO FOLLOW . . .

Case 3:07-cv-05775-PJH   Document 5-2   Filed 12/14/2007   Page 17 of 38

```
                         PUBLIC INFORMATION
                            INMATE DATA
                         AS OF 11-27-2007


REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 020       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 916-930-2010   FAX: 916-930-2008


PROJECTED SATISFACTION DATE.....: 05-10-2008
PROJECTED SATISFACTION METHOD...: 3621E CMPL




G0002       MORE PAGES TO FOLLOW . . .
```

Case 3:07-cv-05775-PJH   Document 5-2   Filed 12/14/2007   Page 18 of 38

```
                              INMATE DATA
                           AS OF 11-27-2007


REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  04-20-1985 VIA MAND REL


------------------------PRIOR JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: CALIFORNIA, NORTHERN DISTRICT
DOCKET NUMBER...................: CR 81-157 SAW
JUDGE..........................: S.A. WEIGEL
DATE SENTENCED/PROBATION IMPOSED: 09-23-1981
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 05-23-1983
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

G0002       MORE PAGES TO FOLLOW . . .
```

Case 3:07-cv-05775-PJH   Document 52   Filed 12/14/2007   Page 19 of 38

```
                        PUBLIC INFORMATION
                          INMATE DATA
                       AS OF 04-20-1985
```

```
REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 010      ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS      RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 916-930-2010   FAX: 916-930-2008
SPECIAL PAROLE TERM.............:


RESTITUTION...:  PROPERTY:       SERVICES:        AMOUNT:  $00.00

-------------------------PRIOR OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  391
OFF/CHG: ATTEMPT AND CONSPIRACY, SECTION 841-851, 21 USC 846.

    SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
    SENTENCE IMPOSED/TIME TO SERVE.:    5 YEARS
    NEW SENTENCE IMPOSED...........:    3 YEARS
    BASIS FOR CHANGE...............: COURT ORDER MODIFYING SENTENCE


    G0002      MORE PAGES TO FOLLOW . . .
```

Case 3:07-cv-05775-PJH   Document 35-2   Filed 12/14/2007   Page 20 of 38

```
                        PUBLIC INFORMATION
                           INMATE DATA
                        AS OF 04-20-1985
```

```
REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 010      ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS      RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 916-930-2010   FAX: 916-930-2008
```

```
-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 09-10-1992 AT TRM AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 05-23-1983
TOTAL TERM IN EFFECT............:     3 YEARS
TOTAL TERM IN EFFECT CONVERTED..:     3 YEARS


G0002        MORE PAGES TO FOLLOW . . .
```

```
                           AS OF 04-20-1985


REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 916-930-2010   FAX: 916-930-2008
JAIL CREDIT....................:    FROM DATE      THRU DATE
                                    04-27-1981      09-18-1981


TOTAL JAIL CREDIT TIME..........: 145
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 7
TOTAL SGT POSSIBLE..............: 252
PAROLE ELIGIBILITY..............: 12-29-1983
STATUTORY RELEASE DATE..........: 04-20-1985
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: 07-01-1985
EXPIRATION FULL TERM DATE.......: 12-28-1985


NEXT PAROLE HEARING DATE........: UNKNOWN

G0002       MORE PAGES TO FOLLOW . . .
```

PUBLIC INFORMATION

```
REGNO..: 73026-011 NAME: CASTRO, HERNAN O'RYAN
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: CSC / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 916-930-2010   FAX: 916-930-2008
TYPE OF HEARING.................: UNKNOWN


ACTUAL SATISFACTION DATE........: 04-20-1985
ACTUAL SATISFACTION METHOD......: MAND REL
ACTUAL SATISFACTION FACILITY....: TRM
ACTUAL SATISFACTION KEYED BY....: DRZ


DAYS REMAINING..................: 252
FINAL PUBLIC LAW DAYS...........: 0



G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# Exhibit 3

**Program Statement 7300.09,** *Community Corrections Manual*
**Chapter 5 , pages 7-9; 30-31; 38-39.**

c.  Referral Log.  Each CCM shall maintain a chronological log of CCC transfer referrals.  Records shall be maintained until the next Program or Operational Review.  The log must contain at least:

- Offender name and register number.
- Referral institution and date referral was received.
- Name of referral CCC (or 3-digit code) and date of referral to CCC.
- Date of CCC reply.
- Transfer date.
- Date institution notified (via DST waiting list).
- Comment section.

## 5.3.  DIRECT PLACEMENT OF OFFENDERS IN CCCs

All direct placements, including supervision and direct court commitments, shall be subjected to the more restrictive Community Corrections Component of the CCC program, unless directed otherwise by judicial recommendation.

### 5.3.1.  Probation/Supervised Release

a.  Judges may require probationers to reside in or participate in a CCC program as a condition of supervision.  If CCMs determine that space is available, they shall authorize CCCs to accept the offenders and the CCM or CCC Director shall notify the USPO.

b.  The Bureau pays for probationers and supervised releasees in CCCs only when a court or U.S. Parole Commission order requires it as a condition of supervision; however, expenses for pretrial cases in CCCs, including alleged probation violators who may be required to reside in CCCs as a condition of release from jail, are the responsibility of probation or the pretrial agency.

### 5.3.2.  Parole/Mandatory Releasees

The U.S. Parole Commission may require parolees and mandatory releasees to reside in CCCs as a condition of supervision.  If the CCM determines space is available, they shall authorize CCCs to accept the offenders and the CCM or CCC Director shall notify the USPO.

### 5.3.3.  Direct Court Commitments

Federal judges may recommend that CCCs be designated for inmates to serve short-term sentences (ordinarily less than one year).

CCMs shall carry out such a recommendation if they determine that this designation is appropriate.  CCMs shall consult with MCAs in all situations of designation of community based facilities for periods exceeding one year.  If space is not available or if inmates are inappropriate for designation of CCCs, an appropriate designation shall be made.  The sentencing judge shall be notified in writing, with an explanation outlining the reasons for not satisfying the judicial recommendation regarding a specific institution or program as noted in the Program Statement on **Judicial Recommendations and U.S. Attorney Reports**.

### 5.3.4.   Community Confinement

**Title 18 U.S.C. § 3563(b) and United States Sentencing Guideline Section 5C1.1,** provide for residence in or participation in the program of a community corrections facility.  Inmates who are sentenced to community confinement reside in a CCC in lieu of some portion of the term of commitment required by the Sentencing Guidelines.  The judgment should specify "Community Confinement." The CCC referral package should contain the same information as specified in the referral package for Public Law placements.

### 5.3.5.   Intermittent Confinement

Offenders sentenced to Intermittent Confinement remain in Bureau custody during nights, weekends, or other time periods, in lieu of some portion of the term of commitment required by the Sentencing Guidelines.  This condition of probation is authorized in **Title 18 U.S.C. § 3563(b) and United States Sentencing Guideline Section 5C1.1.**  Usually, it is served in jail.  If no jail or institution is available, a CCC may be designated with the court's approval or upon the court's recommendation.  These commitments shall be handled like direct court commitments; the USMS must request designation for an Intermittent Confinement commitment after they receive the Judgment in a Criminal Case specifying commitment to the Bureau.  These commitments are subject to the same discipline, escape, and sentence computation procedures (see the **Sentence Computation Manual** for rules on awarding jail credit) as other Bureau inmates during the period of Intermittent Confinement.  They are probationers during other times.  If a CCC is designated, these cases are subject to the provisions of the Community Corrections Component.  These offenders should be treated as inmates to the greatest extent possible.  In the event of a serious disciplinary infraction the sentencing court should be notified.

5.3.6. **CCC Placement as a Release Condition**

Offenders who are placed on supervised release or have a supervised release period stipulated to follow confinement in their Judgment in a Criminal Case may be required to reside in a CCC as a condition of supervised release for the time specified by the court. The USPO may refer offenders serving a supervised release term in the community who require a more structured environment to the CCM for CCC placement. When inmates are released directly from institutions with a court or U.S. Parole Commission ordered supervision release condition that they reside in a CCC, institution staff shall forward a referral package to the CCM and providing CIMS clearance when appropriate. Refer to the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedure**.

5.4. **CENTRAL INMATE MONITORING SYSTEM**

The Central Inmate Monitoring (CIM) System is a classification system the Bureau uses to monitor the transfer, temporary release, and community-based activities of inmates who present special concerns for management. The CCM has clearance authority for all CIM assignments, except Witness Security cases, which are reviewed by the Central Office Inmate Monitoring Section. Community corrections staff shall notify the "Review Authority" of clearances using EMS Form 404, Requesting Central Inmate Monitoring Clearance. See the Program Statement on **Central Inmate Monitoring System** for additional information and guidance on who the appropriate "Review Authority" is in different cases.

As CIM "Coordinators" for inmates confined at contract facilities, CCMs have the same responsibility as the institutional CIM "Coordinators" for CIM cases in their areas. CCMs are involved in the designation process and in providing case management services to inmates in the community. They are the first to become involved with inmates when U.S. Marshals request a designation. It is required that the CCM and case manager be certified in CIM procedures and complete CIM Certification every three years.

CIM areas unique to community corrections offices are:

   5.4.1. Watching for local media and other information on potential CIM cases; keeping a daily log and a file with CIM material and sending material to the regional office, as appropriate; and keeping the file in a locked drawer if it is a Witness Security case so only those with a need to know have access.

PS 7300.09
CN-2 5/19/99
Chapter 5, Page 30

MINT Referral," documenting who will have financial
responsibility for the baby.

## 5.13. GENERAL CASE MANAGEMENT IN CONTRACT CCCs

### 5.13.1. Offender Subsistence Collection

To promote financial responsibility and offset the cost of
incarceration, the Bureau requires inmates to make subsistence
payments to contractors.  Contractors shall collect 25% of each
employed inmate's weekly gross income not to exceed the daily
inmate-day rate.  Payments shall be rounded down to the nearest
dollar amount.  Offenders who have other means of financial
support (VA Benefits, Worker's Compensation, retirement income,
etc.) shall contribute an amount determined by the contractor and
approved by the CCM, to approximate 25% of their weekly income.

Contractors must collect the full subsistence due.  Partial weeks
of residence are prorated.  Contractors shall reduce the monthly
billing to the Bureau by the amount collected in subsistence.  An
inmate who fails to pay subsistence may have privileges withheld
or disciplinary action may be taken, including termination from
the program.  Unless otherwise indicated by the court,
supervision cases shall pay subsistence.

If the court indicates that subsistence should not be collected,
the CCM shall comply with the court's order.  If the court has
made it known that they do not consider it appropriate to collect
subsistence on a direct commitment, the CCM should treat this
like any other judicial recommendation, that is, look at the
merits of the case and make every effort to make a sound
decision.  If the CCM determines not to follow the court's
recommendation, a letter of explanation must be sent.  Absent a
court order, offenders are responsible for subsistence payments
as outlined in this section.

Pretrial defendants in a CCC are not restricted from paying
subsistence.  The CCM should ensure that contractors work closely
with the local pretrial services office to determine which, if
any, pretrial defendant(s) should pay.

The subsistence program applies to all offenders assigned to
community-based programs.

In **cases of extreme hardship**, CCMs may waive or modify
subsistence payments on a case-by-case basis, with the MCA's
concurrence.  Ordinarily, obligations including fines,
restitution, or court costs shall not be considered a factor when
granting waivers.  Extreme hardship is defined as a situation

when the offender has made every effort to establish a suitable release plan, but, due to circumstances beyond his or her control, has been unable to prior to release.  Examples of such situations include homelessness, unemployment due to physical or mental health reasons, unexpected or emergency critical health care needs, or no community resources.

To be considered for a modification or waiver of subsistence, the offender must submit to the contractor a written justification along with a financial statement to include a listing of all debts and assets.  The contractor shall forward the offender's request to the CCM with its recommendation.  Subsistence shall be waived/modified for inmates who have been assessed a Cost of Incarceration Fee.  Refer to the Program Statement on **Cost of Incarceration Fee**.

5.13.2.  **Social Security Payments to Offenders**

Both **42 U.S.C. § 402** and implementing language in **20 CFR 404.468** provide the following guidance on this issue:

> Convicted felons are not entitled to receive Social Security benefits for any part of any month of which the individual is confined.  For definitional purposes, confinement means as long as the individual is under a sentence of confinement and has not been released due to parole or pardon.  It should be noted that benefit payments to any other person who is entitled on the basis of the prisoner's wages and self-employment income are payable as though the prisoner were receiving benefits.

The Social Security Administration has held that the regulation means offenders are not entitled to benefits if they are transferred from an institution to a CCC, home confinement, or any other program if their sentences are still running and they have not been released from custody.

**Exception**:  Disability benefits may be allowed to individuals participating in a vocational rehabilitation program that the court and the Social Security Administration approves.

5.13.3.  **Employment**

One of the most important purposes of CCC placement is employment assistance.  Contractors are to ensure that offenders begin working as soon as possible and must assist those who need help in finding employment.  Most offenders are expected to be employed within 15 working days of arrival at a CCC.

PS 7300.09
CN-2 5/19/99
Chapter 5, Page 38

through the MCA should they determine a gratuity in excess of
$100 is warranted.  The Program Statement on **Release Gratuities,
Transportation, and Clothing** shall be referenced for guidance on
allowable amounts.

    b.  The CCM shall request the USMS to provide funds for
release gratuities, clothing, and transportation, if funds are
not available under the provisions of the contract with the non-
federal facility (a gratuity clause should be included in the
contract whenever possible).  The CCM must advise the USMS in
writing of an impending release date five days in advance to
allow time for this to be accomplished.

    c.  When the Bureau is "piggy-backing" a USMS contract, the
USMS will pay these expenses and the Bureau shall reimburse the
USMS.  Otherwise, reimbursements are made directly to those
providers under contract directly with the Bureau.  The USMS
office making the disbursement will forward the appropriate
standard form to the CCM.  The CCM shall put this information on
a SF-1034 form (Public Voucher for Purchases and Services Other
Than Personal), sign it, and forward the SF 1034 to the regional
office for processing.

## 5.15    COST OF INCARCERATION FEE (COIF)

CCMs are responsible for complying with the **Program Statement on
Cost of Incarceration Fee** (COIF), which applies to prisoners who
are convicted in U.S. District Courts, committed to the custody
of the Attorney General, and serving a term of incarceration that
began on or after January 1, 1995.  This includes aliens and
those confined to contract jails.

Note that the Cost of Incarceration Fee, which is imposed by the
Bureau, is distinct from the Cost of Incarceration Fine, which is
imposed by the courts.  The Program Statement delineates the
differences between these obligations.  At no time will both be
imposed on one inmate.

When appropriate, the CCM shall compute the fee, establish a
payment schedule in accordance with the **COIF** Program Statement,
and notify all direct court commitments under their jurisdiction
who owe a COIF using the appropriate **COIF** Program Statement
Attachment.  Inmates who are institution transfers shall continue
the installment plans established by their unit teams.  In the
case of an inmate owing a COIF who transfers to a CCC, the CCM is
notified of the COIF balance by regional correctional programs
staff immediately after they receive notification from the
institution.  Institution notification must be forwarded no later
than two weeks prior to transfer.

Inmates who fail to make COIF payments may be removed from the CCC.  When an inmate releases from a CCC with an outstanding obligation, the CCM shall notify the regional comptroller, who will process the bill in accordance with the **Program Statement on Accounting for Cost of Incarceration Fee.**

Subsistence shall be waived for institution transfers whose COIF payments are greater than or equal to subsistence.  When COIF is less than the calculated subsistence obligations, the difference may be collected as subsistence.  Direct court commitments with a COIF are to have subsistence waived.

5.16.  **SEXUAL ABUSE/ASSAULT PREVENTION AND INTERVENTION**

CCMs shall ensure that contractors have procedures in place to prevent and address incidents of sexual abuse/assault.  This includes informing inmates, training contract staff, and following correct reporting procedures.  Specific requirements are found in the most recent **Community Corrections SOW.**  The Program Statement on **Sexual Abuse/Assault Prevention and Intervention Programs** can also be referenced.

### 5.16.1  **Informing Inmates**

Inmates transferring to a contract facility from a federal institution have already been educated on preventing and avoiding sexual abuse/assault.  Contractors must provide this education to all other federal inmates and document it in their files.  All inmates are to be advised during facility orientation who to contact regarding incidents of sexual abuse/assault.  These requirements shall be reviewed during facility monitorings.

### 5.16.2  **Training Contract Staff**

All contractors are responsible for ensuring their staff are trained in prevention, identification, and handling of sexual abuse/assault incidents.  This training shall be documented by the contractor and reviewed during facility monitorings.

At a minimum, all inmates claiming to be the victim of a sexual assault shall receive services addressing medical, mental health, social, and protective needs.

### 5.16.3  **Reporting Requirements**

Contractors shall report all incidents of sexual assaults to the CCM immediately.  The CCM shall ensure that the contractor notifies local law enforcement authorities and, in the case of

# Exhibit 4

**Community Based Program Agreement for inmate Hernan O'Ryan Castro
Dated June 21, 2007**

BP-S434.073  **COMMUNITY BA.**    **PROGRAM AGREEMENT**  CDFRM
DEC 98
**U.S. DEPARTMENT OF JUSTICE**                                **FEDERAL BUREAU OF PRISONS**

I, Hernan CASTRO, Register Number, 72036-011, hereby authorize employees of the Department of Justice and employees of any facility contracting with the Department of Justice to release any or all of the contents of information in my inmate central file to educational facilities, social agencies, prospective employees, etc., for the purpose of assisting in all phases of community programming and release planning.  I also authorize the above persons to advise prospective employers that I am currently in the custody of the U.S. Attorney General serving sentence or under the supervision of the U.S. Parole Commission or U.S. Probation Office.  This consent will remain in effect until my release from supervision or until revoked in writing by me.  Revocation of this authorization may result in my removal from a community-based correctional program.

I understand that while a resident of a community corrections center or work release program I will be expected to contribute to the cost of my residence through payments to the contractor and I agree to make such payments.  I understand that failure to make payments may result in my removal from a community-based program (Not applicable for MINT referrals).

I understand that urinalysis or other Bureau of Prisons authorized testing to detect unauthorized drug or alcohol use may be required as a condition of residence in a community corrections center or work release program, and if required, I agree to submit to such testing.  I understand that ingestion of poppy seed products may result in positive test results for unauthorized drug use and is therefore prohibited.

I understand that I am expected to assume financial responsibility for my health care while a resident of a community-based correctional program.  Should I be unable or unwilling to bear the cost of necessary medical care I understand that I may be transferred to a suitable institution or facility, at the Governments option, to receive such care.  I understand that no medical care may be provided to me at Government expense without prior authorization of the Bureau of Prisons.

I understand that I may be required to cooperate with a substance abuse assessment and participate in any treatment recommended as a result of the assessment.

I understand that I may be required to abide by the conditions of supervision as imposed by the sentencing court or the U.S. Parole Commission, including the payments of fines and restitution and to follow the instructions of the probation officer as if on supervision.

I understand that upon arrival at the community corrections center I may be initially placed in the restrictive Community Corrections Component for a period of orientation.  In this component, I will be expected to remain at the CCC unless authorized to leave for employment or other authorized program purposes.  Additionally, I understand that social visits and recreational/leisure activities will be confined to the CCC.

I understand that while a resident of a community corrections center or work release program I will be required to abide by the rules and regulations promulgated by such program.

For MINT referrals, I understand that I or the guardian shall assume total financial responsibility for my child's care while I am a resident of a CCC.  Should I or the guardian be unable or unwilling to bear my child's financial cost, I will be transferred back to my parent institution immediately.  I understand that I understand that no financial support will be provided to my child by the Bureau of Prisons.

PART II

In the event that I am approved for home confinement, I agree to abide by the following conditions related to my legal participation in home confinement.

I understand that my participation in home confinement will be an alternative to placement in a CCC for no more than the last six months or 10% of my sentence, whichever is less.  I am aware that I will legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape.

I agree to report to my assigned probation officer or the contractor's facility immediately upon reaching my release destination.

I understand that if I decline to participate in the recommended home confinement program I may face administrative reassignment out of the community corrections program.

I agree that during the home confinement period, I will remain at my place of residence, except for employment, unless I am given permission to do otherwise.  I also understand that I will be required to pay the costs of the program based on my ability to pay.

I also agree to maintain a telephone at my place of residence without "call forwarding," a modem, "Caller ID" or portable cordless telephones for this period.  I also agree that if my confinement is to be electronically monitored, I will wear any electronic monitoring device required, follow procedures specified and not have "call forwarding" on my telephone.

| Inmate's Printed Name and Signature | Date |
|---|---|
| Hernan CASTRO/ | 06/21/07 |
| Witness' Printed Name and Signature | Date |
| J. Johnson/ | 6-21-07 |

Record copy - CCM; Copy - CCM; Copy - Central File
(This form may be replicated via WP)                           Replaces BP-S434.073 dtd NOV 95

# Exhibit 5

**Notice of Subsistence Payments to inmates housed in San Francisco RRC**

CORNELL COMP TAYLOR ST Fax:4153460358    Dec 5 2007 03:24pm P002/008

# CORNELL

People Changing People

Important…read carefully!

## Subsistence (Rent) Payments

All subsistence (rent) payments must be paid directly to your Case Manager or the Job Developer. You must also bring your pay stub or a photocopy with you showing tax breakdowns/deductions when you make your payment.

Subsistence includes **all** earnings from Employment, Government Assistance, Disability or other income you receive while at Cornell.

Subsistence must be paid in the form of money orders only.

Subsistence must be collected within three days of your receiving payment.

When you figure out your subsistence payment for the Bureau of Prisons, it is calculated as 25% of your Gross pay before taxes. You will then drop the change and pay the dollar amount.

**Example:** Gross pay is $247.63.
25% of $247.63 = $61.91.
Drop the change, pay $61.00

If you turn in the wrong amount, you will have to exchange it for the correct amount!!
So, be careful!!!

_____        _____
Resident's Signature                               Date

Cornell Companies, Inc. · *Taylor Street BOP Center*
111 Taylor Street, San Francisco, California 94102
415-346-9769 -- Fax 415-346-0358 -- www.cornellcompanies.com

# Exhibit 6

**Program Statement 7310.04,** *Community Corrections Center (CCC) Utilization and Transfer Procedure,* **pages 4-6**

PS 7310.04
12/16/98
Page 4

to and prepare for the prisoner's reentry into the
community.  The authority provided by this subsection may be
used to place a prisoner in home confinement.  The United
States Probation Office shall, to the extent practicable,
offer assistance to a prisoner during such pre-release
custody."

18 U.S.C. § 3621(b) provides:

"The Bureau of Prisons shall designate the place of the
prisoner's imprisonment.  The Bureau may designate any
available penal or correctional facility . . . the Bureau
determines to be appropriate and suitable."  A CCC meets the
definition of a "penal or correctional facility."

Therefore, the Bureau is not restricted by § 3624(c) in
designating a CCC for an inmate and may place an inmate in a CCC
for more than the "last ten per centum of the term," or more than
six months, if appropriate.

Section 3624(c), however, does restrict the Bureau in placing
inmates on home confinement to the last six months or 10% of the
sentence, whichever is less.

6.  PRETRIAL/HOLDOVER AND/OR DETAINEE INMATES.  This Program
Statement does not apply to pretrial, holdover, or detainee
inmates.

7.  COMMUNITY-BASED PROGRAMS

   a.  Community Corrections Centers (CCC).  CCCs, commonly
referred to as "halfway houses," provide suitable residence,
structured programs, job placement, and counseling, while the
inmates' activities are closely monitored.  All CCCs offer drug
testing and counseling for alcohol and drug-related problems.
During their stay, inmates are required to pay a subsistence
charge to help defray the cost of their confinement; this charge
is 25% of their gross income, not to exceed the average daily
cost of their CCC placements.  Failure to make subsistence
payments may result in disciplinary action.

   These contract facilities, located throughout the United
States, provide two program components:  the Community
Corrections Component and the Prerelease Component:

   (1)  The Community Corrections Component is designed as the
most restrictive option.  Except for employment and other
structured program activities, an inmate in this component is

PS 7310.04
12/16/98
Page 5

restricted to the CCC.  An inmate shall ordinarily be placed in
the Community Corrections Component upon arrival at the CCC.

This orientation period normally lasts for two weeks or
until the inmate has demonstrated to CCC staff the responsibility
necessary to function in the community.  Based on their
professional judgment, CCC staff shall determine when an inmate
is prepared to advance to the Prerelease Component.

(2)  The Prerelease Component is designed to assist inmates
making the transition from an institution setting to the
community.  These inmates have more access to the community and
family members through weekend and evening passes.

  b.  Community Corrections Programs.  In addition to a CCC's
traditional services, the Bureau also has the following
community-based programs.  Referral procedures may be described
in independent Bureau directives issuances.  The Community
Corrections Manager (CCM) reviews the inmate's characteristics
and the recommendations noted in the referral package to
determine if one of the following programs (if available) may be
more appropriate than traditional CCC placement.

(1)  Comprehensive Sanctions Center (CSC).  The CSC concept,
initiated by the Bureau, with the extensive cooperation and
teamwork of U.S. Probation and CCC contractors, was developed to
provide courts with a wider range of sentencing options and to
facilitate the development and implementation of community
program plans tailored to the individual needs of prerelease
inmates.

The CSC is designed to meet the needs of higher risk
prerelease inmates and consists of six different levels of
supervision, ranging from 24-hour confinement to Home
Confinement.

It also may have an intensive treatment component consisting
of substance abuse education and treatment, life skills training,
mental health counseling, education, employment assistance, and
mentoring.  The inmate's progress is systematically reviewed by a
Program Review Team (PRT), consisting of representatives from the
Bureau, U.S. Probation, and the CCC.

(2)  Mothers and Infants Together (MINT).  MINT is an
alternative residential program that promotes bonding and
parenting skills for low risk female inmates who are pregnant.
The inmate is placed in the program two months prior to delivery
and remains there for three months after delivery.

(3)  Home Confinement.  Home Confinement is a generic term
used to cover all circumstances in which an inmate is required to
remain at home during non-working hours of the day.  Electronic

PS 7310.04
12/16/98
Page 6

monitoring equipment is sometimes used to monitor compliance with the program's conditions.  These programs provide an opportunity for inmates to assume increasing levels of responsibility, while, at the same time, providing sufficient restrictions to promote community safety and convey the sanctioning value of the sentence.

Home Confinement provides an option for inmates who do not need the structure of a residential facility.  Except for inmates who are initially sentenced to and graduate from the Intensive Confinement Center Program, statutory provisions limit the length of Home Confinement to the last 10% of the sentence, or six months, whichever is less.  Inmates are required to pay subsistence of 25% of their gross income to defray the costs of Home Confinement and electronic monitoring.

The Bureau is involved in two Home Confinement programs: Home Confinement operates from the Bureau's own network of CCCs and the U.S. Probation Division program.

(a)  <u>CCC Contractors</u>.  The first form of Home Confinement is CCC contractor-operated programs.  In these programs, CCC staff monitor the inmate.  Currently, only a few of these programs use electronic monitoring equipment.  Supervision is provided by daily telephone contacts and periodic personal contacts in the home and workplace.

(b)  <u>U.S. Probation Office</u>.  The second form of Home Confinement involves placing federal inmates in programs operated by the U.S. Probation Office.  These programs use electronic monitoring equipment with U.S. Probation Officers (USPO) providing supervision.

(4)  <u>Transitional Services Program (TSP)</u>.  The community-based transition phase of the Bureau's Residential Drug Treatment Program is designed to complement the accomplishments and continue the institutional program's treatment plan.  It reinforces the inmate's personal responsibility to lead a drug-free lifestyle through personal accountability for choices, confrontation of negative thinking patterns, and instruction in basic social skills.  Inmates who successfully complete the Residential Drug Treatment Program's institutional phase should normally be considered for the maximum 180 day period of CCC placement, if they are otherwise eligible.